Argued January 20, reversed February 7, reconsideration denied
March 8, petition for review denied May 31, 1978

GORECKI, *Respondent,*
*v.*
BARKER MANUFACTURING COMPANY,
*Petitioner.*
(No. 76-4883, CA 9240)

574 P2d 348

Ridgway K. Foley, Jr., Portland, argued the cause
for petitioner. With him on the briefs were Ancer L.
Haggerty, Roger A. Luedtke and Souther, Spaulding,
Kinsey, Williamson & Schwabe, Portland.

Philip F. Schuster, Portland, argued the cause for
respondent. With him on the brief was R. W. Kitson,
Portland.

Before Schwab, Chief Judge, and Johnson, Gillette
and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

This is an appeal from a Workers' Compensation Board order determining that claimant's back injury was compensable. Claimant testified that while assisting another employe in lifting a nine-drawer dresser weighing an estimated 900 pounds, the dresser fell on his toe, injuring his toe and back.[1] The sole issue is whether this alleged industrial accident ever occurred. The referee concluded that claimant's testimony was not believable based upon the other evidence presented, and denied the claim. The referee expressly disclaimed that his findings on credibility were based upon his opportunity to observe "the appearance, attitude or demeanor of the witness." The Board made the following findings:

"Claimant requests review by the Board of the Referee's order which affirmed the denial of claimant's claim for a low back injury.

"Claimant, a 54-year-old inspector repairman, alleges he sustained an industrial injury on July 1, 1976 while lifting a 9-drawer dresser. That evening of July 1, 1976, there was a union arbitration meeting to which claimant went. Witnesses at this meeting testified that claimant squirmed in his chair and appeared uncomfortable and several overheard him state he had hurt his back at work lifting a dresser.

"Mr. Angelos, the man who assisted claimant in lifting the drawer [*sic,* dresser], did not remember the incident. One witness, Mr. Edel, testified that while claimant and he were eating lunch claimant told him he hurt his back at home. Claimant testified this conversation never took place and he never ate lunch with Mr. Edel.

"On July 3, 1976 claimant was examined at the emergency room of the hospital where a diagnosis was made of sciatica. Claimant was examined by Dr. Kayser on July 6, 1976 and gave a history of increasing low back pain, left buttock and left leg pain for the past month.

"Claimant first made his claim for an industrial injury when he was hospitalized on July 20, 1976. It wasn't until September 1, 1976 when Dr. Kayser again

[1] Claimant makes no claim for compensation for the injury to his toe.

[ 453 ]

examined him that he gave a history of the industrial injury.

"The Referee found that doctors do not fabricate histories given to them but claimants sometimes do. He found that the· evidence indicates claimant did not sustain a compensable injury and affirmed the denial.

"The Board, on de novo review, finds that four witnesses testified to observing claimant's obvious discomfort the evening of the injury and furthermore, testified that claimant told the personnel manager and themselves that he had hurt his back lifting the dresser. On cross-examination, Mr. Angelos, the man who assisted claimant with the drawer [*sic,* dresser], indicated that the incident could have occurred but he just did not remember.

"The Board further finds no inconsistencies in the testimony of the witnesses even though the Referee did. We conclude that claimant did suffer a compensable injury as he alleged.

"\* \* \* \* \*."

The Board concludes that there was "no inconsistency in the testimony of the witnesses" after reciting the direct conflict between the testimony of Edel and claimant. The record reeks of testimonial conflict. The Board wholly discounts the conflict between claimant's and Angelos' testimony. Claimant testified:

"Q. Now, what did you do after this [the alleged industrial accident] occurred; did you just go on working, or did you sit down and rest for a minute, or eat your lunch, or what?

"A. This man that I was helping, he didn't like to let up on his work or be away from his work—

"Q. Excuse me, you are not answering my question —

"A. Yes, I am—well, I told him that it was on my toe, to stop for a moment, we would move it; and by that time, it was swollen, and it was bothering me.

"Q. This man was Mr. Van Angelos?

"A. Yes, Van Angelos. I told him what happened, and I told him we had to stop a minute, and I told him I didn't know whether I could work any longer that day or not; and after that, from time to time, I would have to

stop and rest, especially after lunchtime I had to rest. I looked at my toe, and it was swollen up by that time."

Claimant further testified that Angelos apologized and also observed claimant thereafter having physical pain and lying down during work breaks. Angelos testified he remembered working with claimant on the day the alleged accident occurred, but could not recall the accident or any of the other events asserted by claimant. The Board deduced that Angelos had a bad memory. A more likely conclusion is that Angelos' lack of recall was merely the thoughtful reflections of an honest witness. He could not recall the events alleged because they never occurred.

The Board's findings concerning Dr. Kayser are incomplete and misleading. We agree with the referee's more detailed findings as follows:

"Claimant did not notify any medical personnel he was claiming a compensable injury until he was admitted to the hospital on July 20, 1976. To the contrary, when he was first seen by Dr. Kayser, claimant could not 'remember any specific onset of pain or any onsetting incident of pain'. Claimant contends his accent caused a lack of communication with Dr. Kayser, but Dr. Kayser does not agree. On September 1, 1976 claimant finally told Dr. Kayser his low back pain was caused by an incident at work. On July 16, 1976 Dr. Kayser felt 'there may be a slight weakness of the dorsiflexion of the great toe' and on July 20, 1976 Dr. Kayser reported 'He had some slight trace of weakness in the extensor hallucis longus'. It is noted that these tests were made a month and a half before the X-rays were made on September 1, 1976, but claimant didn't allege a toe injury to Dr. Kayser until the latter date."

The Board placed great weight on the testimony of the four witnesses who attended the union arbitration meeting, but neglected to mention that one additional witness gave conflicting testimony. The testimony of the four witnesses corroborates the fact that the claimant may have been suffering from back problems on the night of July 1, 1976. Significantly, none of the witnesses mentioned any injury to the toe. In any

event, the testimony of these four witnesses had little, if any, probative value as to whether the accident in fact occurred. Claimant's hearsay declarations to the four witnesses were merely repetitive of his testimony. There is nothing in the record which adversely reflects on the credibility of witnesses Angelos, Edel or Kayser. We find their testimony to be persuasive. The referee's order should be reinstated.

Reversed.